Good morning. May it please the Court, I'm Kevin Lafke representing Ida Navarrete, the employee in this case. And as the Court knows, of course, summary judgment was granted in favor of the employer. And if I only make one point up here today, I want to make the point that there were multiple factual disputes that were resolved against Ms. Navarrete in the District Court's opinion. I'd like to start with what's reproduced at Volume 1A of the excerpt of record, the District Court's opinion and order on summary judgment, page 11 of that opinion and order. And there's a lot of discussion in the briefs about conversation that was had prior to plaintiff's termination. And the District Court weighs in on that dispute here at the top of page 11 of the opinion and order on summary judgment. Again, that's behind tab 2 in Volume 1A of the excerpt of record. And this is the statement attributed to Manager Beers. And on summary judgment, it was set forth in an affidavit by Karina Meza Castillo. And there's some dispute about whether Beers said plaintiff was going to be terminated because she was Mexican or plaintiff was going to be terminated and because she was Mexican, she wouldn't do anything about it. And the interesting thing about this whole dispute is plaintiff wasn't there when the conversation occurred. It was Castillo who heard the conversation. The District Court had Castillo's affidavit that set forth firsthand what was stated. And the reason this statement's important is that the District Court essentially diminishes it and uses it as an opportunity to say that plaintiff contradicted herself. And neither reaction by the District Court, ruling by the District Court, was appropriate. MS. GOTTLIEB I don't understand. Can you just clarify? I'm looking at the order, and it says that Castillo testified that they would not do anything about it because they were Mexican, so not that they were going to get fired because they were Mexican. And the District Court also says that plaintiff contradicted herself, said one thing in her depo, and then said another. Are you saying that the District Court misspoke in any of those three statements that it makes here? MR. KESSLER Yes, as to the second. No, as to the District Court's characterization of Castillo's affidavit, which is at 242-243 of the excerpt. MS. GOTTLIEB So are you saying that plaintiff didn't say in the first instance what Castillo now, what Castillo said, that plaintiff didn't say that, what the District Court says is plaintiff clearly stated in her deposition that Beers stated that he did not think that plaintiff would do anything if she was terminated because she was Mexican. Are you saying she didn't say that in her depo? MR. KESSLER Let me explain what happened in the depo. And the page numbers I refer to are in the excerpt of record. Page 60 in her depo, plaintiffs asked about this. And plaintiff says, this is a direct quote, it was something like they were going to get fired and because they're Mexican they wouldn't do anything about it. Then next page, 61, she's asked more about this same statement. 61, she says, I don't strictly remember point by point it's been so long, but here's the statement I remember. And remember, this is what's being conveyed to her by Castillo. As stated in the Castillo affidavit, it's related to plaintiff both in a text message and verbally. Then later, page 90 in the excerpt, more plaintiff depo, defense counsel asks plaintiff again. Now I want to go back to this statement that you said earlier. And this is really important. At this point, defense counsel mischaracterizes the statement and says it differently than what plaintiff had said previously in the deposition. And at that point, plaintiff again says, well, you know, the best of my recollection it was something like they were going to get fired because they're Mexican. It's a little bit different. But the district court was respectfully wrong to characterize that as a contradiction in plaintiff's testimony because plaintiff was admittedly relating something that she was provided with second hand. And she repeatedly qualified her statements by saying, you know, my memory's not perfect. It was something like this. But the issue, I understand what you're saying, I think. But the issue really is not whether the plaintiff might have stated something in slightly different ways or whether she might even, because of the different ways in which she's stating it, could be construed as contradiction. The question is what Castillo say. And we have direct evidence is what Castillo said because we have evidence from Castillo. Well, more importantly, the question is what did Beers say? And the district court, as you just pointed out, minimized that. Beers is a manager. He's involved in the termination decision. It's just not correct what the district court says in that next paragraph. He was not the individual who recommended termination or supported it. At 127 to 130 in the excerpt, Beers lays out his role. But I want to come back to what I said, though. You're trying to say, you're trying to use as evidence of discriminatory intent that Beers said or meant or implied or somehow communicated that they're getting fired because they're Mexicans. The evidence we have as to what Beers said is what Castillo says Beers said, right? I don't think that you have to find that Beers said they're getting fired because they're Mexican. I think it's important what Castillo said in her affidavit, which is Beers said they're going to be terminated and they won't do anything about it because they're Mexican. That's just as much evidence of discriminatory intent as they're being fired because they're Mexican. I mean, think about it. So you're simply content to rest on that as a piece of evidence. Absolutely. When the district court says in its opinion there at page 11, Beers merely stated that the Navarretes, that he did not think the Navarretes would appeal or contest the termination because they were Mexican. With all respect, I don't think it's appropriate to put the word merely in that statement. In other words, saying that someone's going to be terminated, and we know Nike has this internal appeal process, and obviously we know there's a civil justice remedy to say before the decision is made, we don't think they'll do anything about it because they're Mexican is not evidence of discriminatory intent. It seems to me like a significant resolution of an issue against the plaintiff on summary judgment, and inappropriate. In that next paragraph, referring to Beers, he was not the individual who recommended termination or supported it. Please remember, not just Beers testified in his deposition at 127 to 130, that he was part of a consensus building decision. They call it a calibration when they're trying to get a consensus on terminating someone. Also, Manager Glenn Owen at 215 of the excerpt of record, another manager who was at the meeting described it as a consensus, and he said each person had a place in the decision. He described himself, again he's not speaking for Beers, but he's one more person at this meeting that's part of the termination decision for plaintiff. He says, I'm part of that decision because we were trying to build a consensus. When you read the district court's opinion, that's a significant resolution of a couple of pretty significant facts against the plaintiff, inappropriately on summary judgment. Now, just a couple more points before I run out of time. The 1981 preemption issue. This case was pled wrongful termination. In order to prove wrongful termination, plaintiff needs to show she engaged in some protected activity. It's undisputed that she did. She complained about how Lange sexually harassed her, and the district court inappropriately ruled that race and color discrimination preempted Oregon's common law wrongful termination remedy. Defendants say, disingenuously I believe, plaintiff in her pleading said that she complained about all different kinds of discrimination, gender, race, and so on. Suggests somehow that that's what plaintiff would have to prove in order to prove wrongful termination. Plaintiff would only have to prove one of those things. In other words, she could prove that she complained about gender discrimination, which has nothing to do with 1981. We'd all agree. And so that's why the 1981 can't preempt the wrongful termination toward in this case, because the wrongful termination could have been solely about complaint of gender discrimination, and solely retaliatory for that. And there's no dispute. Defendants don't argue that that was an adequate remedy as it relates to a complaint of gender discrimination. Now, just one more point before I sit down. The discussion in the calibration termination meeting also included a conversation of plaintiff's complaints about Lange, and that's confirmed at 130 of Beer's deposition, or 130 of the Lange decision. That's prima facie retaliation right there. They're talking about her complaint. Thanks. Thank you. Good morning. May it please the Court. My name is Amy Joseph Peterson. I represent Nike in this matter. I'd like to address first Mr. Lafky's assertion that the Court resolved multiple fact disputes in favor of Nike. That is not the case at all. Let me ask you a question based on this language of Castillo's. The Navarretes were going to get fired in that they would not do anything about it because they were Mexican. Why is that not circumstantial evidence, not direct evidence, but circumstantial evidence that what's the name of it, Beer's, thought that it would be easier to fire the Navarretes because they were Mexican and would not protest? Your Honor, first of all, Mr. Lafky misspoke. The comment, the evidence from Ms. Meza-Castillo's after the decision, not before the decision. She says that she heard it said the day before Ms. Navarrete was terminated, and the evidence is the record, is that the decision was made on September 16th and 17th. Castillo said we're going to get fired. I'm reading from page 11 of the opinion and order. We're going to get fired. That looks future to me, not past. Yes. And your question is whether or not that could be read as indirect evidence of discrimination, and I suppose it could be. It could reflect some discriminatory animus on the part of Mr. Beer's. I concede that. The problem with Mr. Lafky's argument is he ignores the fact that there was an intervening, superseding event here, and that is that Ms. Harrington and Mr. Nelson conducted an investigation. They interviewed 12 separate independent witnesses. They did not interview Mr. Beer's, and they did not interview Mr. Owen, and based on the information that they had gathered and the facts that they had corroborated, they brought a recommendation of termination to the calibration meeting where seven independent managers, and I acknowledge Beer's was one of those managers, made the decision to terminate based on that recommendation. If you read Mr. Beer's testimony, what he says about his participation in that calibration meeting is that he really didn't have anything to do with it. He had taken over Ms. Robbins' role and had supervised Ms. Navarrete for the last 15 days. Therefore, he didn't speak in the meeting, he says, and he approved the recommendation that was made by the HR professionals who had conducted the investigation. Your position is that there's no triable issue of fact as to causation between Beer's supposed, perhaps, discriminatory animus and the action taken by Intel. Excuse me. Yes, Your Honor. Judge Bea, I am saying that. I'm saying that even if one were to assume that this stray comment by Mr. Beer's, that they wouldn't do anything about their termination because they're Mexican, even if one could assume that that meant they wouldn't be fired because they were Mexican, which I think is a huge leap to make to begin with, there is no evidence in the record that even if he was demonstrating discriminatory animus, that that tainted or infected the decision-making process. And in fact, the evidence is all to the contrary. The people who conducted the investigation never spoke to Beer's or Owen's about the matters at issue and came to their conclusion recommending termination without having spoken to them. So your argument is no causation is a matter of law? If you – I hadn't phrased it as causation before, but yes, you could phrase it as causation. There is no – yes, there's no nexus, there's no connection between any discriminatory animus as expressed by Mr. Beer's and the ultimate decision-making by Nike. I'd also like to point out to the Court, if I could, that the chronology given in the misleading in this case, and I would urge the Court to look carefully at the citations to the record. What happened in this case was very simple. On July 13th, Ms. Navarette brought forward a complaint to her supervisor about gossip in the workplace that her husband was kissing another woman. That was the only complaint that she brought forward. That complaint was dealt with. All of the people at issue were spoken to and told not to gossip in the workplace, that it was disruptive. Approximately two weeks later, Ms. Navarette called her husband's alleged lover three times on the phone. In the first of those phone conversations, the salacious comments were made. She called Ms. Lange back two more times after that. The Monday following those phone calls, she made her complaint. Immediately thereafter, Nike went to a DECO, which was Ms. Lange's direct employer, and asked that Ms. Lange be removed from the work site. She was removed, and Ms. Navarette admitted she had no problems thereafter. It was only because a DECO filed a report with Nike saying a couple of things. One is, we think that your employee, Ms. Navarette, misrepresented the facts in order to get Ms. Lange fired, and we think that your employee has engaged in inappropriate workplace misconduct. That then prompted Nike to conduct its own investigation into Ms. Navarette's conduct. The discussion that a plaintiff puts in the record about the various elbows to the chest and hits on the rear end and the swearing comments, those sorts of things, those comments were never reported to Nike. There was never any report to Nike. Those came out during the course of the investigation. It seems to me the evidence is simply overwhelming on the side of, as soon as Nike learns there's a problem with Lange, they can her, and that's taken care of. The only part of this case that seems remotely possible was that the termination of Navarette might have been motivated. In terms of not dealing properly with Lange, Nike was on it from the first. Right. Which does away... So would you address the part about the termination of Navarette, which is the only part of the case that seems to me remotely plausible? You're right, Your Honor. So the direct evidence, and Your Honor, would you prefer that I address it on the gender claim or the race claim or the marital status claim? Well, you've got three minutes. Talk fast. All right. I'll deal with the race claim, because I think that's the only one that really is at issue here. We've talked about the Beers comment extensively. I'd like to talk for a moment about the Owens alleged comment. Owens allegedly said to someone that we need to hire a more diverse temporary workforce here, because there are a lot of Spanish speakers, and that was causing problems among the English speakers. First, there is no evidence in the record as to when this comment was made. The comment could have been made after Ms. Navarette's termination. Secondly, there's no evidence at all tying the comment to the decision-making process. Once again, we have this intervening or causation issue with the investigators having come to their own conclusions about what Ms. Navarette did. And third, the comment itself does not express any racial animus at all. It is a reflection of Nike's English-only language policy on the floor, which this Court in Garcia v. Spansteig has said is a legitimate policy for an employer to have that does not violate Title VII. The indirect evidence that plaintiff contends is evidence of race discrimination is using Matt Seth as a comparator to say that Matt Seth engaged in the same sorts of behavior yet was not terminated, and therefore, and he's Caucasian, and therefore, that is evidence that Nike's termination of her was driven by a discriminatory animus. First of all, there's no evidence to support that. Plaintiff was terminated because Nike determined what she had done, and there's no evidence of any comparable behavior by Seth. The only behavior by Matt Seth that was disclosed was disclosed by plaintiff and her husband in the course of their depositions. There was no information given to any of the decision-makers or to the investigators about any alleged misconduct by Matt Seth. The evidence that plaintiff has put forward to this Court is that Matt Seth threatened to kill plaintiff's husband because plaintiff's husband was having an affair with Matt Seth's girlfriend, Lorena Lang, and that evidence simply never was brought to Nike's attention. There's no evidence in the record at the time of the depositions that Nike was aware of that information. So is not comparable. He is not similarly situated. In fact, and this is a case that's not cited in our brief, Smead v. Metro Property, 237 F. 3rd, 1080 at 1094, a showing that similarly situated employees were treated in a like manner to plaintiff negates any showing of intent. And here we have a white woman who was terminated and a Hispanic male who was terminated for the same conduct the plaintiff had engaged in. That negates any inference of pretext or discriminatory intent whatsoever. I'm out of time. I will address the 1981 preemption argument if Your Honors would like. Thank you very much. Thank you very much. Mr. Lafky, would you like a minute for rebuttal? What do you say to the point made by Ms. Peterson that there's no causation between beers and firing? That was my only point I wanted to make with my short time remaining and I would just leave you with this. The district court at page 11 of the opinion, quote, referring to beers, he was not the individual who recommended termination or supported it, end quote. Beers in his deposition at 128 of the excerpt of record, page 18 of the depositions transcript, quote, it was basically recommended through HR to move to termination and I supported the recommendation, end quote. That's a fact that was resolved against the plaintiff on the issue of causation and for that reason, I'd ask the court to reverse and remand. Thank you. Okay, thank you. Thank both sides for your helpful argument. The case of Navarette v. Nike is now submitted for decision. I should say something now that I should have said at the very beginning. The court thanks all of you for showing up at 8 o'clock. This is an early start, so we appreciate that. Thank you. The next case on the argument calendar is Houston v. City of Koki.
judges: Fletcher W. , Bea, Ikuta